(No. 90-CV-0329— 

RHONDA LEE a/k/a RHONDA COLINA, as Guardian of the Persons and Estates of AMANDA COLINA, ANGEL COLINA, and VICENTA COLINA, Claimant, v. THE STATE OF ILLINOIS, Respondent.

*Opinion filed May 5, 1995.*

*Order filed August 31, 1995.*

NORTHWESTERN UNIV. LEGAL CLINIC (THOMAS F. GERAGHTY, of counsel), for Claimant.

JIM RYAN, Attorney General (PAUL H. CHO, Assistant Attorney General, of counsel), for Respondent.

## OPINION

JANN, J.

This action is the second hearing of a consolidated claim encompassing three separate claims originally identified by 91-CV-0028, 91-CV-0130 and the above number.

All relate to claims for compensation under the Illinois Crime Victims Compensation Act (740 ILCS 45/1 *et seq.*), and arise from the murder of Armando M. Colina ("Armando") on August 14, 1989. The original claim brought on her own behalf by Rhonda Lee ("Rhonda"), the live-in companion of the victim and the mother of his three children, was denied because the parties were never married.

This second claim is brought on behalf of the minor children fathered by the victim and currently under the care of their mother, Rhonda Lee, and asks for compensation based upon the loss of the three children's father's financial support.

The key question is whether, as required by the statute, the victim, Armando Colina, supported his children in the six months prior to his death.

At hearing, testimony was given by Glenn Reitsma ("Reitsma"), stepfather of Rhonda Lee and stepgrandfather to the Claimant children. Reitsma and Rhonda's mother shared an apartment with Rhonda and Armando for a time in 1988 and Reitsma testified that Armando paid him in cash for their share of the rent. Reitsma also got a job for Armando at his place of employment. The work was apparently sporadic, as Armando's total earnings for 1988 were less than $4,800. There is no direct evidence of any earnings in 1989, the subject period.

Irene Anthony ("Irene"), who worked as a babysitter for Armando and Rhonda between 1988 and 1989, testified concerning the fact that Armando always paid her in cash, usually on a daily basis, in an amount between $70 and $80 per day, four or five days per week. Irene worked on an as-needed basis and made approximately $600 to $700 per month.

The final witness was Rhonda Lee who testified that Armando earned about $1,200 per month after taxes and that he gave her $250 every two weeks to run the house. Rhonda claimed that after the work at her stepfather's company ran out, Armando worked for a now-defunct company that rehabbed old refrigerators, "Gonzalo Used Refrigeration," which brought in a net take-home of $300 per week. Claimant's brief maintains that wage and tax statements for 1989 are not available but does not state whether "Gonzalo Used Refrigeration" filed any wage or tax statements with the Federal government or State of Illinois. Claimant wrongfully asserts that Armando worked for Data East Pinball during the six months prior to his murder and wrongfully ascribes to him both full-time work and the title of project manager. Mr. Reitsma was a project engineer at Data East; Armando's work at Data East does not add up to 12 weeks work during the whole of 1988. There is no evidence that Armando performed any work at Data East during the statutory period. Further, the argument over the W-4 is disingenuous: Armando claimed multiple dependents on his W-4 to avoid having any taxes taken out; at the time of filing his return, he could regain all taxes withheld without claiming any deductions, as his personal exemption was greater than the minimal amount he had earned during 1988.

What appears from the record is that Armando Colina apparently had some sources of money which were not a part of anyone's formal records. Claimants will argue that the source of the funds which Armando used to support his family is irrelevant, and that the only relevant issue is how his children will get along without such financial contribution.

Nevertheless, the record presented before us is a murky one. According to this record, Rhonda and Armando

met in 1984. Rhonda had a baby in 1985, Robert Vasquez, whose father is not Armando. Armando and Rhonda continued to keep company and Amanda was born to them in 1987. In 1988, Armando and Rhonda signed a lease with Rhonda's parents for the apartment on Howard Street. Reitsma got Armando a job at his company but Armando didn't earn $4,800 there during the year. This is the year *before* Rhonda claimed that work got slow and that Armando was laid-off. Six months after moving in, the arrangement ended (Irene refers to Reitsma as "the man that left.") Rhonda testified that the "family" then moved to an apartment on Argyle Avenue. In fact, the birth certificate of Angel Colina, born 12/28/88 shows an address of 839 West Sheridan Road. Later in her testimony, Rhonda stated that they moved into the Argyle address in late February or early March of 1989. No explanation for the termination of the Howard lease, nor the subsequent move from Sheridan after a few months is detailed in the record. However, Reitsma testified, "I believe [Armando] tried to [support his children] but I don't really know how well he succeeded." Reitsma further testified that he was "concerned about [the grandchildren's] welfare."

Throughout this time, Armando, with 1988 gross income on the record of about $400 per month, was paying $500 to his wife for incidentals; $300 to his in-laws for rent (later $425 for rent at the Argyle address); $700 to $800 to Irene Reynolds for baby-sitting because Armando "might be" out working for eight to ten hours. (Irene stated "he must be working because he paid me"); buying groceries, snacks, toys, and junk food for the children; taking days off whenever he felt like it, also according to the testimony of Irene Reynolds; "he used to buy new furniture like snapping the fingers" (testimony of Irene Reynolds); in the two weeks prior to his death, Armando, with no known source of income, paid over $3,000 cash to

Allied Furniture, Central Furniture, Nelson Brothers and Highland Superstore for furniture and stereo equipment. Shirlee Garcia of Traveler's Aid states by affidavit that she saw Armando almost every day during the last four months of his life, although he was supposedly at work.

Looking at all the evidence, there is nothing on the record which indicates that the victim engaged in any type of lawful employment during the period for which financial responsibility had to be proven, outside of the nebulous assertions that some type of refrigerator repair business no longer extant was paying him and apparently not reporting such wages. Claimant Rhonda Lee testified that she had contacted the owner, Gonzalo, of Gonzalo Used Refrigeration in conjunction with filing this cause of action. Ms. Lee stated she was unable to adequately explain the proceedings to Mr. Gonzalo as he spoke Spanish and she was unable to make herself understood. No further attempt to verify the victim's wages and his exact period of employment at Gonzalo is set forth in the record.

Claimant's brief relies upon *In re Application of Michael DeBartolo* (1984), 36 Ill. Ct. Cl. 442, for the proposition that in a compensation case for loss of support, "dependency must be proved by a preponderance of the evidence," which is one that "is more probably true than not." However in *DeBartolo*, the decedent's employer/partner and work release records provided some evidence to support a finding of employment. We have also found that failure to substantiate earnings through applicable tax returns results in a finding that Claimant has failed to meet the burden of proof. (*In re Application of Jeanette M. Crissie* (1992), 44 Ill. Ct. Cl. 443.) In *Crissie* we further held that "copies of paid utility bills prove only that they were paid, but do not prove income or earnings of the victim." See *Crissie*, at 448.

The record before us is most analogous to *Crissie, supra*. The numerous offerings of hearsay evidence as to decedent's income do not support a finding of lawful income for the six months preceding his death.

We hereby find Claimants have failed to sustain their burden of proof that decedent provided support to his children during the six months prior to his death. This claim is hereby denied.

## ORDER

JANN, J.

This cause comes on to be heard on Claimants' petition for rehearing. The Court has carefully considered the record in this cause and finds Claimants' petition for rehearing is hereby denied. Claimants have failed to meet their burden of proof as to decedent's employment in the six months prior to his death.